UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

URSULINES, L.L.C.                                      CIVIL ACTION

VERSUS                                                 NO:  12-2974

REGIONS BANK AND ABC                                   SECTION: "S" (1)
INSURANCE COMPANY

ORDER AND REASONS

IT IS HEREBY ORDERED that Regions Bank's Motion for Summary Judgment (Doc.

#12) is GRANTED, and plaintiff's claims against it are DISMISSED WITH PREJUDICE.

BACKGROUND

This matter is before the court on a motion to dismiss, or alternatively, motion for summary

judgment filed by defendant, Regions Bank.  Regions argues that plaintiff, Ursulines, L.L.C., cannot

maintain any cause of action against Regions for a failing to make a certain loan to Ursulines

because there was no signed credit agreement for that loan.

In 2005, Ursulines sought to purchase vacant land in the Tremé neighborhood of New

Orleans, Louisiana for the purpose of developing a condominium complex.  On July 8, 2005,

Regions' predecessor in interest, AmSouth Bank, wrote Cesar Burgos, Ursulines' representative

member, discussing the possibility of AmSouth's providing a construction loan to Ursulines, and

outlining the terms and conditions of any such loan.  That correspondence stated that it was "for

discussion purposes only" and that "[t]his letter is not to be construed as a commitment to lend, but

as an expression of [AmSouth's] interest in providing the financing outline above."  One of the terms

was the pre-sale of five of the condominium units.

On July 13, 2005, AmSouth issued a commitment letter to Burgos, in which it agreed to lend

Ursulines $1,050,000 or 80% of the acceptable appraised value of the land or 75% of the contract

price for the purchase of the land.  The commitment letter did not include the construction loan that was proposed in the July 8, 2005, communication.

On August 12, 2005, a certified appraiser valued the property at $1,400,000.  On August 15, 2005, Ursulines purchased the property for $1,400,000, and executed a loan agreement and a promissory note secured by a mortgage on the property in favor of AmSouth in the principal amount of $1,050,000.  Thereafter, Ursulines engaged an architect to design the condominium complex, and began to pre-sell the properties.  By August 29, 2005,[1] Ursulines had pre-sold five units.

In February 2006, a certified appraiser reconfirmed that the value of the land was $1,400,000, and found that the value of the proposed improvements had a prospective market value of $7,600,000.

In May 2006, AmSouth merged with Regions, and Regions became the owner of the August 15, 2005, loan agreement and promissory note.  However, Regions would not offer Ursulines a construction loan conforming to the terms that AmSouth had outlined but not finalized in the July 8, 2005, proposal.  Instead, Regions required Ursulines to pre-sell all of the condominium units to obtain the construction loan.

Thereafter, Ursulines renewed the promissory note with Regions several times, each time extending its maturity date.  On March 26, 2010, Ursulines paid $730,000 of the principal balance on the note after receiving a loan from First NBC Bank.  Ursulines then sold the property for $1,214,000, and paid Regions the remaining balance on the promissory note, $265,650, on May 19, 2010.

---

[1] This is the date on which Hurricane Katrina struck New Orleans, Louisiana.

Ursulines filed this action against Regions alleging that Regions damaged Ursulines by failing to offer Ursulines a construction loan that conformed to the terms proposed by AmSouth in July 2005.  Specifically, Ursulines alleges that:

> Thereafter, on August 15, 2005, AmSouth approved a commercial development loan in the amount of four million and eight hundred thousand dollars ($4,800,000.00).  Of this loan, one million and four hundred thousand dollars ($1,400,000.00) would become available immediately for the purchase of the land property.  The remaining funds, three million and four hundred thousand ($3,400,000.00), for the construction of the condominium complex, would be available as a line of credit and required that five (5) united be presold prior to commencing disbursement of the funds.

Ursulines alleges that, as a result of Regions' failure to lend it the construction funds with the same terms proposed by AmSouth on July 8, 2005, it was forced to abandon the condominium project and lost profits and pre-paid out-of-pocket expenses.  Ursulines contends that Regions is liable to it under the theories of breach of contract, fraud, detrimental reliance and unjust enrichment.

Regions filed this motion to dismiss, or alternatively, motion for summary judgment arguing that Ursulines cannot maintain a cause of action against it for failure to enter into the construction loan with Ursulines because there was never a credit agreement for that loan that meets the requirements of Louisiana law.  In support of its motion, Regions attached the affidavit of its Assistant Vice President, John W. "Casey" Thornton, Jr. Thornton attested that he maintains the pertinent records at the bank, and there was no credit agreement for the construction loan, only the July 8, 2005, proposal that specifically states that it is not a commitment to lend.

Ursulines argues that its claims are not entirely about the proposed construction loan, but rather that Regions inducement of Ursulines to enter into the loan to purchase the property, and its detrimental reliance on Regions' representations regarding its intent to enter into the construction

loan.  Ursuline argues that Regions never disavowed that it intended to make the loan.  Ursulines

also argues that whether Regions acted fraudulently during the parties' business relationship is a fact

question that cannot be determined on summary judgment.

## ANALYSIS

### A.      Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a

complaint for failure to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6)

motion to dismiss, enough facts to state a claim for relief that is plausible on its face must be

pleaded. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl.

v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)).  A claim is plausible on its face when

the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant

is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Factual

allegations must be enough to raise a right to relief above the speculative level, on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl., 127 S.Ct. at

1965.  The court "must accept all well-pleaded facts as true and view them in the light most

favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir.

2008).  However, the court need not accept legal conclusions couched as factual allegations as true.

Iqbal, 129 S.Ct. at 1949-50.

In considering a motion to dismiss for failure to state a claim, a district court may consider

only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean

Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).  However, "[d]ocuments

that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are

referred to in the plaintiff's complaint and are central to her claim." Id. at 498-99 (internal citations omitted).

"If, however, a district court considers other information 'outside the complaint,' it must treat the motion to dismiss as a motion for summary judgment. Rodriguez v. Rutter, 310 Fed. Appx. 623, 626 (5th Cir. 2009). "In the event a motion to dismiss is converted to one for summary judgment, a district court must first give the parties notice, and then may consider all the evidence presented." Id.

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.     Louisiana Credit Agreement Statute**

Louisiana Revised Statutes § 6:1122, provides that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the

relevant terms and conditions, and is signed by the creditor and the debtor." Section 6:1121 defines

a "creditor" as "a financial institution or any other type of creditor that extends credit or extends a

financial accommodation under a credit agreement with a debtor." LA. REV. STAT. § 6:1121.  A

"debtor" is "a person or entity that obtains credit or seeks a credit agreement with a creditor or who

owes money to a creditor." Id.  A "credit agreement" is "an agreement to lend or forbear repayment

of money or goods or to otherwise extend credit, or make any other financial accommodation." Id.

Further, La. Rev. Stat. § 6:1123 provides:

> A. The following actions shall not give rise to a claim that a new
> credit agreement is created, unless the agreement satisfies the
> requirements of R.S. 6:1122:
>
> (1) The rendering of financial or other advice by a creditor to a
> debtor.
>
> (2) The consultation by a creditor with a debtor.
>
> (3) The agreement of a creditor to take or not to take certain actions,
> such as entering into a new credit agreement, forbearing from
> exercising remedies under a prior credit agreement, or extending
> installments due under a prior credit agreement.
>
> B. A credit agreement shall not be implied from the relationship,
> fiduciary, or otherwise, of a creditor and the debtor.

Moreover, a financial institution is not deemed or implied to be acting as its customer's fiduciary or

to have any fiduciary obligation or responsibility to its customer unless there is a written agency or

trust agreement under which the financial institution specifically agrees to act and perform in the

capacity of a fiduciary. Id. at § 6:1124.

In Jesco Constr. Corp. v. Nationsbank Corp., 830 So.2d 989, 992 (La. 2002), the Supreme

Court of Louisiana, answering a question certified to it by the United States Court of Appeals for

the Fifth Circuit, held that the Louisiana Credit Agreement Statute precludes all actions for damages

arising from agreements that do not conform to the Louisiana Credit Agreement statutes, regardless of the theory of recovery. The court reasoned that term "action" means any "demand for the enforcement of a legal right," and the "primary purpose of the credit agreement statutes is to prevent potential borrowers from bringing claims against lenders based upon oral agreements." Id.

The Louisiana Credit Agreement statutes clearly apply to this case. Regions is a creditor, i.e. it is a financial institution that extends credit. Ursulines is a debtor, i.e. an entity that sought credit with Regions, and also owed money to Regions on a different loan agreement. Ursulines' allegations involve a proposed credit agreement for the construction loan, i.e. a proposed agreement to lend. Under La. Rev. Stat. § 6:1122, a debtor cannot maintain any action on a credit agreement that is not in writing, expressing consideration, setting forth the relevant terms and conditions and signed by the creditor and the debtor. Ursulines has not alleged that such an agreement definitively existed, nor has Ursulines contradicted, with competent summary judgment evidence, Thornton's affidavit that there was no such agreement. All of Ursulines' causes of action are predicated on Regions' alleged oral agreement to extend the construction loan to Ursulines. Because Ursulines has no proof of a written credit agreement conforming to the requirements of the Louisiana Credit Agreement statutes, Regions is entitled to summary judgment on all of Ursulines' claims. See Jesco, 830 So.2d at 992. Therefore, Regions' motion for summary judgment is GRANTED, and Ursulines' claims against it are DISMISSED WITH PREJUDICE.

## CONCLUSION

**IT IS HEREBY ORDERED** that Regions Bank's Motion for Summary Judgment (Doc. #12) is **GRANTED**, and plaintiff's claims against it are **DISMISSED WITH PREJUDICE**.

7

New Orleans, Louisiana, this __20th__ day of May, 2013.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**